IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | NO. 3:17-cr-00062 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| | ) | |
| ROBERTO MANIER | ) | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant's renewed Motion for Compassionate Release (Doc. No. 75, "Motion"), whereby Defendant seeks reduction of his 104-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific situation (especially his particular medical profile), satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release" under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in his case.[1] The Government has filed a response in opposition (Doc. No. 79, "Response"),[2] conceding that Defendant has shown the requisite "extraordinary and compelling reasons" for compassionate release but arguing that compassionate release nevertheless must be denied because other

---

[1] A motion under Section 3582(c)(1)(A) is actually a motion for a reduction in sentence, including but not limited to reductions that would result in the defendant-movant's immediate release. Although the grant of a motion for sentence *reduction* would not necessarily result in the defendant's immediate *release*, generally such motions are known as ones for "compassionate release," perhaps because they typically do seek immediate release rather than a mere reduction in sentence that would result in an earlier release someday but not immediately.

[2] The Response was filed under seal. Where the Court has referred herein to a document under seal, like this response or Defendant's Presentence Investigation Report ("PSR"), the Court is unsealing the substance of the document only to the extent necessary to make the references it has made to the document; the document otherwise is not intended to be and has not been unsealed.

applicable considerations counsel strongly against compassionate release. (Doc. No. 79). Defendant has filed a reply (Doc. No. 81) to the Government's response.

PROCEDURAL BACKGROUND

On April 3, 2019, Defendant was charged in a four-count Indictment (Doc. No. 40). One week later, without a plea agreement (but perhaps with an unwritten understanding) with the Government, Defendant pled guilty to Count 2 of a four-count Indictment, charging Defendant with distributing, and possessing with the intent to distribute, cocaine, in violation of 21 U.S.C. § 841(a)(1). (Doc. Nos. 48, 49). Defendant's PSR calculated an advisory Guidelines range of 151 to 188 months, based on a final Offense Level of 29 and a Criminal History Category of VI; these calculations were driven by the fact that Defendant qualified as a Career Offender on the basis of three prior felony convictions (two of them in federal court) that qualify as controlled substance offenses.[3] (PSR at ¶ 33). Ultimately, this Court sentenced Defendant to a 100-month term of imprisonment to run consecutively to the 4-month sentence imposed for Defendant's violation of conditions of supervised release in Case No. 3:13-cr-00062. (Doc. No. 71). At sentencing, the Court dismissed Counts 1, 3, and 4 of the Indictment upon motion of the Government.

The instant Motion followed. As of now, the Government indicates, Defendant still has 78 months left to serve on the 104 months imposed in his total sentence(s). (Doc. No. 79 at 2).[4] The

---

[3] The Government puts it this way: "According to his PSR, [Defendant] qualified as a Career Offender on the basis of three prior felony convictions (including two federal convictions) that qualify as *"serious drug felonies"*." (Doc. No. 79 at 2). The italicized language is incorrect. It is true that sentencing enhancements under 21 U.S.C. § 841(a)(1)—which are cognizable only if an Information is filed pursuant to 21 U.S.C. § 851—are (after the enactment of the First Step Act) based upon the existence of one or more "serious drug felonies" as defined by statute. But career offender status is based upon the existence of two or more convictions that qualify as a "controlled substance offense" (or a "crime of violence"), as defined by the United States Sentencing Guidelines.

[4] Based on the Court's review of the PSR and BOP's inmate data (Doc. No. 79-1), the Government's figure appears to be correct (rounding the figure down to 78). Elsewhere, the Government refers to Defendant having "76" months left to serve. (Doc. No. 79 at 15). This appears incorrect and likely was a scrivener's error.

Government's filings also indicate a release date, assuming credit for good time served, in approximately 67 months.

## LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act of 2018, P.L. 115-391, 132 Stat. 5239,[5] the district court may reduce a sentence of imprisonment upon motion of a defendant after the defendant has either fully exhausted all administrative rights to appeal a failure of the BOP to file such a motion on a defendant's behalf or waited at least 30 days since the defendant requested BOP to file such a motion. In the present case, it appears undisputed that Defendant made such a request by May 6, 2020 (at the latest) to the warden of Federal Medical Center (FMC) Butner, where he is incarcerated. Thus, Defendant's request is ripe for the Court even if, as the Government claims, BOP has not yet taken action on his request (such that Defendant would not have been in a position to fully exhaust his administrative rights within BOP).

Once it properly can act on a motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court can reduce a sentence under that provision (for any defendant younger than 70 years old)[6] only if it finds extraordinary and compelling reasons to do so. *See* 18 U.S.C. § 3582(c)(1)(A)(i). And the Court does not write on a clean slate in considering whether to make such finding.

---

[5] That paragraph of Section 603 provides:

(b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ''

[6] This subparagraph provides an alternative ground for relief for defendants who are at least 70 years of age. *See* 18 U.S.C. § 3582(c)(1)(A). It is inapplicable here, however, because Defendant is only 53.

Congress tasked the Sentencing Commission with promulgating "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [section] 3582(c) of title 18. . . ." 28 U.S.C. § 994(a)(2)(C). Congress directed the Sentencing Commission, in promulgating these policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to these congressional instructions, the Sentencing Commission promulgated U.S.S.G. § 1B1.13, and its application note, which collectively comprise the policy statement(s).

Practitioners of federal criminal law are accustomed to treating the Sentencing Commission's policy statements as advisory only (especially in the aftermath of *United States v. Booker*, 543 U.S. 220 (2005)). They are exactly that in the context of a defendant's original sentencing—but not in the context of a motion under Section 3582(c)(1)(A). In the latter context, they are by statute mandatory, inasmuch as Congress has prohibited courts from granting a sentencing reduction unless "such a reduction is consistent with applicable policy statements issued by" the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[7]

Together, U.S.S.G. § 1B1.13 and its application note do two things that are relevant here. First, they define, in Application Note 1, "extraordinary and compelling circumstances" to apply in (and only in) situations falling within one or more of five separate and particular categories,

---

[7] In *Booker*, the Supreme Court found unconstitutional (*i.e.*, violative of the Sixth Amendment) Congress's directive that the Sentencing Guidelines are generally what was referred to as "mandatory," meaning that sentence generally had to be imposed within the guideline range calculated using the Sentencing Guidelines. To say the least, this limited Congress's ability to make anything about the Sentencing Guidelines mandatory in the context of an original sentencing. But such limitations do not exists in the context of a motion for sentence reduction under Section 3582(c)(1)(A), wherein the Sixth Amendment concerns driving the *Booker* decision are entirely absent.

which the Court discusses below. *See* U.S.S.G. § 1B1.13 n.1(A)(i)-(ii), (B), (C) & (D).[8] Second, they prescribe additional requirements for obtaining a sentence reduction where the defendant does meet the threshold requirement of "extraordinary and compelling circumstances."[9] Specifically, for a defendant not yet 70 years old (such as Defendant), the court may reduce a sentence if (1) extraordinary and compelling reasons warrant a reduction, *and* (2) the defendant is not a danger to the safety of any other person or to the community, *and* (3) the reduction is consistent with the policy statement. *See* U.S.S.G. § 1B1.13(1)(A), (2) and (3). The Application Note indicates the third requirement may be redundant of the first two, inasmuch as it states that "any reduction made . . . for the reasons set forth in subdivisions (1) and (2) [*i.e.*, U.S.S.G. § 1B1.13(1) & (2)] is consistent with this policy statement." *Id.* n.5.[10]

If the court does find these (two or three depending on how one looks at it) requirements

---

[8] The Application Note also contains various other instructions for considering whether extraordinary and compelling circumstances exist. Such instructions need not be discussed here, as the Government concedes that Defendant has established "extraordinary and compelling reasons" in any event.

[9] It is important to note that these other requirements—being, after all, *requirements*—are mandatory. That is to say, a defendant is *not* eligible for compassionate release merely because there are "extraordinary and compelling reasons" within the meaning of Application Note 1(A). The Government here (in a not uncommon mischaracterization) describes Defendant as "eligible" for (though not entitled to) compassionate release merely because extraordinary and compelling reasons exist. (Doc. No. 79 at 12) ("[T]he United States concedes that [Defendant] has demonstrated "a serious physical or medical condition" as contemplated by U.S.S.G. 1B1.13, cmt.n.1(A), which qualifies him as eligible for release on the basis of "extraordinary and compelling" reasons within the meaning of § 3582(c)(1)).") This description is incorrect because Defendant is not eligible for release unless he satisfies the other two requirements of U.S.S.G. § 1B1.13. Only then can the Court find compassionate release authorized and turn to the Section 3553(a) factors to make a discretionary determination as to whether compassionate release is *appropriate* (as well as authorized by law). But despite this mischaracterization, in fairness to the Government the Court notes that the Government fully understands the gist of what the Court is saying here. The Government writes, "In addition to the above considerations, under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2)." (*Id.* at 14). Exactly; in other words, a defendant is not eligible for a sentence reduction unless the Court can make this determination.

[10] Like many redundancies, this one may seem odd due to its apparent unnecessariness. But it seems motivated by the valid desire to ensure that the Sentencing Commission's criteria for a sentencing reduction expressly both: (a) included the congressional requirement, discussed below, that any reduction be "consistent with applicable policy statements issued by" the Sentencing Commission; and (b) clarified that the required consistency involved nothing more than satisfaction of U.S.S.G. § 1B1.13(1) & (2).

satisfied, the defendant has met the basic eligibility for compassionate release. But even then, the Court does not automatically or necessarily grant the motion for a reduction; instead, it *may*, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce the term of imprisonment (and may impose a term of probation or supervised release that does not exceed the unserved portion of the original term of imprisonment). *See* 18 U.S.C. § 3582(c)(1)(A).

The (familiar) sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Relevant to factor number (5), as discussed above, the Sentencing Commission has

issued a binding policy statement regarding reduction of a term of imprisonment under Section 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13. As further mentioned above, Application Note 1 to U.S.S.G. § 1B1.13 speaks to what constitutes "extraordinary and compelling reasons," identifying five categories of situations where such reasons may be found to exist. Two of the five involve the defendant's medical condition, *i.e.*: (i) the defendant is suffering from a terminal illness; or (ii) the defendant is suffering from a serious physical or medical condition, or serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. *See* U.S.S.G. § 1B1.13 n.1(A). The next two categories relate to defendants over 65 and defendants with particular grave family circumstances, respectively; they are not applicable to the instant Motion.

As for the last of the five categories, the Application Note describes it as encompassing the situation where, "*[a]s determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1(D) (emphasis added).

## THE PARTIES' RESPECTIVE POSITIONS

In the Motion, Defendant relies on the extant COVID-19 pandemic and the fact that he currently is afflicted with prostate cancer. He claims that this combination constitutes "extraordinary and compelling reasons." As Defendant explains it: "Shortly after [learning of prostate issues in 2015], he was diagnosed with prostate cancer. He is currently undergoing external radiation therapy and hormone therapy."[11] (Doc. No. 75 at 3). He further writes, "His

---

[11] The Government states, without dispute from Defendant, that his cancer is curative and not terminal. (Doc. No. 79 at 12 n.3).

cancer and its treatment puts him at higher risk for serious complications from Covid-19. Further, [Defendant] cannot provide self-care and protect himself from Covid-19 while in custody. That is especially true in light of the conditions at Butner, making social distancing impossible and the spread of the virus likely."[12] He notes additionally that the Centers for Disease Control and Prevention (CDC) has declared that "undergoing cancer treatment can be especially vulnerable to and at higher risk for serious complications from Covid-19." (*Id.*). Although hesitant to accept carte blanche statements from even the most esteemed public health authorities or public officials regarding COVID-19, the Court accepts this proposition. So does the Government. In fact, the Government writes that "[b]ecause [Defendant] currently has cancer for which he is undergoing treatment, the United States concedes that he has demonstrated 'a serious physical or medical condition' as contemplated by U.S.S.G. 1B1.13, cmt.n.1(A), which qualifies him as eligible for release on the basis of 'extraordinary and compelling' reasons within the meaning of § 3582(c)(1)."[13] (Doc. No. 79 at 12). The Government's view is that although compassionate release cannot be grounded on Application Note 1(D), compassionate release conceivably could be grounded at least on Application Note 1(A)(ii)(I). The Government correctly notes, however, that under U.S.S.G. § 1B1.13(2) "this Court must deny a sentence reduction unless it determines the defendant 'is not a danger to the safety of any other person or to the community.'" (*Id*. at 14). In the Government's (implied) view, this determination cannot be made as to Defendant. The

---

[12] Defendant argues, "FMC Butner is part of the same correctional complex as Butner Low and Medium, which are both undergoing serious and deadly outbreaks." (Doc. No. 75 at 4). The Government responds, "As of June 11, 2020, FMC Butner reports that four inmates and three staff members have active cases of COVID-19." (Doc. No. 79 at 6). It argues further, "Given this current rate of infection, [Defendant] is not at a severely heightened risk of contracting COVID-19 at FMC Butner. Indeed, [Defendant] has twice tested negative for COVID-19—most recently on May 28, 2020." *Id.* at 13 (citing *id.* at Exhibit 1, Medical Records at 94)). The Court believes the Government has the better of the argument regarding the current specific threat to Defendant at FMC Butner.

[13] As noted in a footnote above, the Court views it as inaccurate to say that Defendant is necessarily "eligible" for relief because he has shown "extraordinary and compelling reasons."

Government further suggests that even if such determination could be made, the Motion should be denied because the factors under Section 3553(a) militate against granting the Motion.

ANALYSIS

The stage is thus set for the Court to decide the Motion. The Court will address the applicable issues in turn: (a) whether Defendant is eligible—or, more precisely, eligible to be further considered—for compassionate release due to alleged existence of "extraordinary and compelling reasons" and the alleged absence of a danger to other persons or the community he would present if released; and, alternatively, if one were to answer this question in the affirmative, (b) whether, upon further consideration (*i.e.*, consideration of the factors set forth in 18 U.S.C. § 3553(a)), the Motion should be granted.

I. EXTRAORDINARY AND COMPELLING REASONS

In addressing the merits, the Court first must determine whether "extraordinary and compelling reasons" exist for Defendant's compassionate release under the standards set forth by U.S.S.G. § 1B1.13 and its application note. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, No. 11-CR-00664-JSW-1, --- F. Supp. 3d ----, 2020 WL 2464751, at *3 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

Here, the Government concedes, not without reason, that the Defendant has met his burden. The Court will assume *arguendo* that he has.

II. DANGER TO THE SAFETY OF ANY OTHER PERSON OR THE COMMUNITY.

Accordingly, this means that Defendant meets the requirements to be considered for compassionate release, such that the Court proceeds to an analysis of the factors under 18 U.S.C.

§ 3553(a) *if* he is not a danger to other persons or the community. *See* U.S.S.G. § 1B1.13. The Court finds that Defendant is such a danger.

The Court does not presume this merely because Defendant is currently incarcerated for a serious offense. The inquiry is more comprehensive than that, involving most significantly a review of Defendant's entire criminal history. As the Government puts it:

> [Defendant] has a Criminal History Category of VI, with a lengthy history of drug crimes, along with several violent crimes. (PSR ¶ ¶ 47-55). That is, [Defendant] has at least five felony drug convictions (including two federal convictions) and two misdemeanor assault convictions—one of which seemingly involved an instance of domestic violence. (PSR ¶ ¶ 45-55). And to put it mildly, [Defendant] has struggled to follow court orders and conditions of release, making him particularly ill-suited for home confinement. According to his PSR, [Defendant] was found to have twice violated the terms of his supervised release in Case No. 3:06-cr-00031-18, (PSR ¶ 51), and violated the terms of supervised release multiple times in Case No. 3:13-cr-00047, including by engaging in criminal conduct that gave rise to the instant case and failing to appear for a revocation hearing in May 2017, (PSR ¶ 52). [Defendant's] violations of his federal supervised release also occurred against the backdrop of several state probation violations. (*See, e.g.*, PSR ¶ ¶ 46, 50). Such factors indicate that [Defendant] will pose a continued danger to the community, if released.

(Doc. No. 79 at 15). The Government has it right, with the caveat that Defendant's criminal history category would be V if he were not a Career Offender. Defendant has been sentenced on 13 different occasions as an adult, over the course of 31 years. Even for a three-decade period, the number is unusually high. And, as the Government notes, many of the convictions are violent and/or otherwise serious. Moreover, the Government rightly focuses on Defendant's demonstrated inability to comply with conditions of release (be it pre-hearing release, probation, or parole); this characteristic is crucial because it is precisely the absence of compliance with conditions of release that eviscerates the protections put in place to protect society against the danger presented by Defendant. For instance, while on supervised release from a case in this Court, Defendant absconded from supervised release pending his final hearing before being apprehended and then

found in violation of his conditions of release based on the conduct at issue in this case. In a prior case out of Wilson County, Tennessee, he violated probation, and then absconded from the parole he received based of revocation of probation. Equally concerning is the fact that little time elapses between release from one conviction and arrest on the next charge. And although many of the convictions, violations and sentences are old, there is a distinct pattern that continues unabated.

With this background, the Court must conclude that Defendant would be a danger to other persons or the community if released given his recidivism as to serious crimes and his history of non-compliance with conditions of release and of absconding. In this situation, Defendant needs a good (or at the very least not bad) record in this regard. And, unfortunately, Defendant's record is poor indeed.

### III. SECTION 3353(a) FACTORS

Although Defendant does not qualify for compassionate release, irrespective of how the Section 3553(a) factors shake out for him, the Court will note several of the Section 3553(a) factors that cut against compassionate release for him.

*The history and characteristics of the Defendant.* As suggested above, Defendant's criminal history cuts heavily against him. So does his history of abuse of, and addiction to, numerous drugs up until his arrest in this case

*The need to protect the public from further crimes of the defendant* also cuts against Defendant, as suggested above.

*The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* likewise does not cut in favor of compassionate release for Defendant. The focus in this case plainly is on the need for medical care. Typically, in original sentencings, the "need to provide the defendant . . . with needed medical

care" relates to the Court's recommendations to BOP as to what medical treatment should be considered and where the sentence should be served. In the instant context, though, it is fairly construed to refer more generally to the need to assess whether Defendant's medical condition can be adequately treated in a BOP facility. Defendant claims that the answer is no, pointing to the risk of COVID-19 infection at the facility where he is incarcerated and to his medical condition, which he says renders him especially vulnerable to bad outcomes should he become infected.

The Court will not act like it knows the extent to which Defendant's chances of infection would be lower if he is released than if he stays in BOP custody, or how much more likely a bad outcome upon infection would be for him as opposed to someone with a more typical medical profile. As matter of sheer epistemology, the undersigned cannot and does not know such things; this is true despite publicly available information from medical experts and public health officials, inasmuch as they do not always agree with one another on issues related to COVID-19 and inasmuch as they seem to have reversed themselves on numerous issues over time.[14] In short, information and opinions regarding the prevalence of, effect of, and optimal countermeasures to COVID-19 have been and remain in constant flux, and it would be folly for the Court to rely blindly on any particular opinion or factual assertion merely because it comes from a purportedly knowledgeable or reputable source.

Having said that, the Court is willing to accept that Defendant is at substantial risk of COVID-19 infection at FMC Butner. The Court is also willing to accept that Defendant's cancer makes him especially prone to bad outcomes in case of infection. As noted above, the Government

---

[14] It seems clear to the undersigned that certain public health authorities, public health officials, and other public officials over time have equivocated regarding, or even starkly changed, their views concerning one or more of numerous issues, including but not limited to: whether COVID-19 can be transmitted person to person; whether persons should avoid crowds and/or otherwise alter their daily regimen due to the presence of COVID-19 in the United States; the likely death toll and mortality rate from COVID-19; whether masks/face coverings should be worn; and the extent to which COVID-19 may be transmitted via contact with inanimate surfaces.

concedes the potentially devastating impact a COVID-19 infection could have upon Defendant in light of his medical condition. (Doc. No. 79 at 12).

But that does not mean that these circumstances ultimately support compassionate release. For one thing, to say the least, it is not like there in no substantial risk of infection outside of BOP custody. For example, in Wilson County, Tennessee (where Defendant proposes to reside if released), the Tennessee Department of Health reports a total of 625 "confirmed or probable" cases of COVID-19 as of June 22, 2020. See https://www.tn.gov/content/tn/health/cedep/ncov/data.html (last accessed June 23, 2020). Given Defendant's history of criminal activity and noncompliance with conditions of release, Defendant demonstrably lacks an ability to comply with rules and societal norms; this is vital, because under his own theory (and the widely-accepted view worldwide), decreasing his risk of infection upon release from BOP custody would require him to observe public/health and societal norms related to COVID-19, such as handwashing and social distancing. Defendant's history unfortunately indicates an unlikelihood to follow crucial rules or norms even where so doing is to the benefit of himself. Defendant does not present good odds of complying with the relevant standards or with the conditions of home confinement (which Defendant himself has proposed) that would further reduce his risk of infection. So there is no good basis to believe that Defendant's release is likely *in actuality*—not just theory—to reduce his risk of infection from COVID-19. Defendant also has failed to show that he actually, not just theoretically, will fare better outside of BOP custody if he were to be infected with COVID-19. For example, the Court cannot conclude he would receive better medical care to combat a COVID-19 infection outside of BOP custody.

Regarding his cancer, Defendant writes, "If released, he can get treatment at Tennessee Oncology Center in Lebanon, TN." (Doc. No. 75 at 11). But as the Government correctly notes,

Defendant does not explain how he would pay for such treatment, and his cancer appears from medical records to be adequately managed by BOP thus far (at no cost to him, of course). (Doc. No. 79 at 14).

Defendant writes, "It goes without saying that as a society, we do not keep individuals incarcerated so that they receive medical treatment." (Doc. No. 81 at 4). True enough. But it is also true that as a society, we generally do keep individuals incarcerated until they have finished serving their lawfully imposed sentences except to the extent the sentence is lawfully shortened; whether the sentence should be shortened under Section 3582(c)(1)(A) is what the Court is now to decide in this case. And the answer to this question should take account of the fact that (a) Defendant is receiving important and significant medical treatment in BOP custody; and (b) it is sheer speculation that Defendant would receive equal or better medical treatment if released.

*The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct* also cuts against Defendant. In the Court's view, there is little doubt that the amended sentence Defendant now seeks would result in a disparately low sentence compared to defendants convicted of (relatively) similar conduct with similar criminal history. As the Government notes, Defendant still has approximately 78 months remaining on his 104-month total sentence of imprisonment. This fact that may weigh against his release. *See United States v. Kincaid*, -- F. App'x --, 2020 WL 2521303, at *1-2 (6th Cir. May 18, 2020) (holding that it is appropriate for district courts to consider the percentage of the overall sentence left to be served when addressing compassionate release motions). As the Court views it, this fact raises the possibility of an unwarranted sentence disparity, comparing Defendant to other career offenders. Given the very high pre-departure guideline range, an amended sentence of roughly 26 months would indeed be unusually low for this kind of crime by an offender in Criminal

History Category VI (or even V). For all of these reasons, the Court finds that granting compassionate release would result in a sentence that runs afoul of this sentencing factor.

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g., United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that if released, Defendant would present a danger to other persons or the community. Alternatively, even if compassionate release were potentially available, it would be inappropriate, considering the Section 3553(a) factors.

For these reasons, the Motion (Doc. No. 75) is **DENIED**.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE